Minute Order Form (06/97)

## United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5979 | **DATE** | 3/12/2002 |
| **CASE TITLE** | Gary Milford vs. Commercial Carriers, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for summary judgment are all granted with respect to count I, strict liability, but denied with respect to count II, negligence. Status hearing set for April 2, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 3/14/02 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 37 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GARY MILFORD, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 99 C 5979 |
| COMMERCIAL CARRIERS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

DOCKETED
MAR 1 4 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Milford brings this action against defendants Commercial Carriers, Inc. (CCI), Delavan Industries, Inc. (Delavan), Ryder System, Inc. (Ryder), Ryder Automotive Operations, Inc. (RAOI), Ryder Automotive Carrier Services, Inc. (RACS), Ryder Automotive Carrier Division (ACD), GACS, Inc., Allied Holdings, Inc., Allied Systems, Ltd., and A.H. Acquisition Corp. Plaintiff seeks compensation under both strict liability and negligence theories for injuries resulting from an accident aboard an auto carrier. Defendants CCI, GACS and Ryder separately move for summary judgment. For the following reasons we grant summary judgment with respect to the strict liability claims, but deny it with respect to negligence.

## BACKGROUND

Plaintiff was a car hauler employed by CCI, a Ryder subsidiary. On May 28, 1997, plaintiff was injured while unloading cars from his auto carrier. Plaintiff filed a workers' compensation claim under Illinois law. He subsequently filed this lawsuit which defendants, invoking diversity jurisdiction, removed here from state court.

A brief description of Ryder's corporate structure is necessary to place the instant

motions in context.[1] Ryder owns several tiers of subsidiaries, including, at some level, all the named defendants. Ryder owned the Ryder Automotive Carrier Group, Inc. (RACG), which owned Ryder Automotive Operations, Inc. (RAOI), which owned CCI. Delavan was a separate Ryder subsidiary until it merged with RAOI in 1992. Sometime after that transaction RAOI transferred Delavan's trailer manufacturing assets to CCI, which was already an RAOI subsidiary. In 1998, RAOI and RACG merged to form Allied ACS, Inc. GACS was created later that same year as successor to Allied ACS. ACD is a division of Ryder, but not a separately incorporated legal entity.

On October 14, 1996, CCI manufactured the carrier in question, a Model #63-2877A Quick Hall Trailer (model 2877A) bearing vehicle identification number 4RCAC7047VB010130. Prior to the merger, Delavan had designed and manufactured the Model #63-2877 Quick Hall Trailer (model 2877). Plaintiff has worked exclusively for CCI; he has never been employed by Delavan, Ryder or any Ryder subsidiary other than CCI. The degree to which the design of model 2877A resembles model 2877 is disputed by the parties.

## DISCUSSION

We may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences, and view all admissible evidence, in the light most favorable to Milford, the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but rather there is not enough to support a

---

[1] We are still unclear as to exact structure. The descriptions in the briefs are ambiguous and, in parts, inconsistent. For present purposes, it suffices that Delavan and CCI were once separate entities, that they merged sometime before plaintiff's injury, and that Ryder ultimately owned both.

reasonable jury verdict. *Id.* at 248.

Plaintiff alleges that Delavan designed his carrier, making CCI and GACS liable as Delavan's successors in interest. He contends that Ryder is liable on two separate bases: its direct involvement in the design process and its control over the subsidiaries that designed and manufactured the hauler. These claims raise a number of distinct legal issues. First, we must consider whether CCI is immune from suit under the workers' compensation exclusive remedy rule. Second, we evaluate plaintiff's strict liability and negligence claims against each defendant. And, lastly, we discuss plaintiff's attempt to hold the parent corporation liable for its subsidiaries' wrongs.

I. The Exclusive Remedy Rule

Typically, an employee's sole remedy against his employer is the Illinois Workers Compensation Act (IWCA), 820 ILCS 305/5(a), but this immunity from tort suits only applies to the actual employer – it does not extend to third parties. *See* Hyman v. Sipi Metals Corp., 509 N.E.2d 516, 520 (Ill. App. 1st Dist. 1987). Plaintiff maintains that Delavan, a third party, would be liable for defectively designing the carrier, and that, as its successor, CCI is liable. He then invokes the dual personality doctrine, which distinguishes between liabilities based on a defendant's status as employer from those based on another legal persona. To apply, plaintiff must establish "(1) a second capacity of the employer which generates obligations unrelated to those flowing from ... that of employer; and (2) a second, distinct legal persona." *Id.* Where a third party merges with an alleged tort victim's employer, the surviving entity can be seen as having two distinct relationships with the employee – as his employer and as successor to the third party. *See* Robinson v. KFC Nat'l Mgt. Co., 525 N.E.2d 1028 (Ill. App. 1st Dist. 1988). Among other effects, the dual personality rule prevents an entity from avoiding

existing liabilities by merging with plaintiff's employer.

Plaintiff contends that CCI assumed Delavan's liabilities when RAOI transferred Delavan's manufacturing operations to CCI.[2] It follows, he maintains, that with respect to Delavan's products CCI stands as a successor to the third party manufacturer, not as an employer. We agree that with respect to Delavan's then-existing obligations, CCI does bear the capacity of a manufacturer and the persona of a successor. But there is an important distinction between products existing at the time of the merger and post-merger operations. In <u>Robinson</u>, the product in question had been manufactured prior to the merger. Even though the injury had not yet occurred, the manufacturer was responsible for any defects in products already in the stream of commerce before the merger. The successor company inherited those liabilities, assuming the persona of manufacturer with respect to those existing products. Here, CCI and RAOI merged in 1992, but the trailer in question was not manufactured until 1996, by which time Delavan had long since ceased to exist as a separate entity. Although CCI could be characterized as a successor with respect to Delavan's liabilities at the time of the merger, that personality does not attach to its own operations after the merger. Those obligations belong solely to the surviving entity, which was plaintiff's employer and therefore subject to the exclusive remedy doctrine. To the extent that plaintiff can establish tortious conduct by Delavan prior to the merger, however, the dual personality exception would apply.

---

[2] We agree that his transaction can arguably be characterized as a merger, meaning CCI would have acquired Delavan's liabilities along with its assets. See <u>Raytech Corp. v. White</u>, 54 F.3d 187, 192 n.6 (3d Cir. 1995). But we cannot decide at this juncture whether CCI assumed Delavan's liabilities, or whether RAOI retained them. The ultimate resolution of this factual question will determine whether GACS or CCI is Delavan's legal successor with respect to pre-merger designs.

## II. Liability for Designs

Plaintiff then argues that Delavan's liability derives from having designed the trailer, rather than from having manufacturing it. CCI, he contends, assumed Delavan's responsibility for those designs. This brings us to the second question: Can a company be held liable for its designs, even if someone else eventually manufactures the product?

### A. Strict Product Liability

The general rule is that strict product liability does not extend to services. *See* Laukkanen v. Jewel Tea Co., 222 N.E.2d 584, 589 (Ill. App. 4th Dist. 1966) (holding design engineer not subject to strict liability); *accord* Harms v. Caterpillar Tractor Co., 399 N.E.2d 722, 723 (Ill.App. 3d Dist. 1980) (holding designer not strictly liable). Defendants rely on Snyder v. ISC Alloys, Ltd., 772 F.Supp. 244 (W.D. Pa. 1991) to characterize Delavan's role as a provider of services. There, the defendant provided designs, technical drawings and professional advice to a manufacturer, whose employee was subsequently injured. The court found that defendant had only provided services, not a product. Delavan, however, did much more than provide advice. It actually manufactured trailers for many years, including model 2877. Plaintiff maintains that model 2877A is merely the same product under a different name. The carrier in question was manufactured at the same plant, possibly by the same workers on the same assembly line. In short, Delavan did everything but assemble and deliver the carrier.

That is exactly where product liability law draws the line. A manufacturer may be held strictly liable for defective designs, but it does not follow that a non-manufacturing designer can be as well. Plaintiff has not identified a single case holding a designer who did not actually manufacture the product strictly liable, and our research reveals that Illinois has specifically

No. 99 C 5979                                                                                                                           Page 6

rejected this proposition in Harms:

> To say that an unreasonably dangerous condition may include design defects does not mean that a party whose only connection to the product is that of the designer is liable under products liability theories. ... Where a party merely designs a product for someone else, there is no sale or equivalent transaction between the parties which subjects the designer to liability as part of the distributive system.

399 N.E.2d at 723.

Product liability law focuses on the product, and it reaches anyone who handles it within the stream of commerce. *See* Restatement (Second) of Torts §402A. Delavan may well have designed the carrier, but the product could not have been defective when it left Delavan's control because there was no product until CCI manufactured it and placed it into the stream of commerce. Because Delavan's drawings, designs and blueprints are not a product, its successors cannot be held strictly liable.

### B. Negligence

Although strict liability does not extend to a designer who does not also manufacture the product, such designers are still accountable for negligence. *See* Laukkanen, 222 N.E.2d at 589. Defendants contend that they had no duty to plaintiff. Delavan designed an auto carrier and transferred those designs to CCI. It was clearly foreseeable that CCI would manufacture the carriers and that, once assembled, drivers would be loading and unloading cars from them. An architect who designs a building, but is not involved in constructing it, still has a duty to exercise reasonable care in designing it. If someone is injured due to a faulty design, the architect will be liable for that negligence. To claim that one who designs a car hauler has no duty to make it reasonably safe for the person who unloads it is simply untenable.

This leaves us with the issue of who really designed plaintiff's carrier. Plaintiff

contends that his carrier was based on Delavan's design, and that, as Delavan's successors, GACS and CCI are responsible for its defects. The facts could support an inference that either GACS or CCI is the successor to Delavan. Any liability would, however, be derivative of Delavan. Defendants maintain that model 2877A is distinct from model 2877, that the newer model was designed post-merger by CCI, and that CCI is therefore solely responsible. To prevail, plaintiff will have to show that his carrier was based on Delavan's pre-merger designs. This is a material factual question that cannot be resolved at summary judgment.

Plaintiff also maintains that Ryder was directly involved in designing the carriers. Ryder formed a task force to investigate safety issues related to Delavan trailers and commissioned an ergonomics report on trailer injuries. Ryder also centralized some design decisions by requiring that its Automotive Carrier Division (ACD) approve any modifications, including safety features. Such interventions in the design process arguably impose a duty on Ryder, independent of Delavan. To the extent the parent's actions affected the design of the 2877A, it is responsible for that design regardless of whether it is distinct from or identical to model 2877.

III. Piercing the Corporate Veil

Plaintiff next claims that Ryder, the parent, should be liable because Delavan and CCI, its subsidiaries, are mere alter egos. Ryder is incorporated in Florida. Florida law permits us to pierce the corporate veil if a subsidiary is a mere instrumentality of the parent and there is some form of improper conduct. *See* Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984). This is consistent with most states' formulations of corporate veil doctrine.

Ryder owned 100% of Delavan's and CCI's stock, either directly or through intermediate subsidiaries. They had numerous directors in common, and Ryder, through

ACD, directly appointed some, if not all, of the subsidiaries' officers.[3] Ryder set its subsidiaries' capital expenditure budgets and determined management's bonuses. ACD was also the conduit for distributing Delavan's technical and safety bulletins to Ryder's other subsidiaries, including the one prohibiting any modifications to trailers unless they were approved by ACD. Moreover, Delavan, and later CCI, did not sell their goods in the general marketplace. They manufactured carriers exclusively for their parent and sister subsidiaries. Ryder also represented themselves to the public as a single entity, as Ryder d/b/a Delavan, and Ryder d/b/a CCI. Finally, in similar court proceedings Ryder has represented itself and its subsidiaries as functionally integrated.

At least one other court has found that there were sufficient questions about Ryder's corporate structure for the corporate veil issue to survive summary judgment. *See* Kleweis v. Transport Support, Inc., 972 F.Supp. 494 (E.D. Mo. 1997). We agree that this factual question must go to a jury, but it is a double-edged sword. If we pierce the veil, we would in essence be finding that Ryder and its subsidiaries are a single legal entity. This could mean that Ryder was plaintiff's real employer, and therefore immune under the IWCA. *See* Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613 (1st Cir. 1988) (noting that piercing veil would have effect of extending workers' compensation immunity to parent). To prevail on this theory, plaintiff would have to establish that Delavan is Ryder's alter ego, making Ryder responsible for its designs, but that CCI is a separate entity, leaving Ryder as a third party for workers' compensation purposes. Piercing the veil with respect to one subsidiary, but not both, is a very fine line. More likely, a fact-finder might conclude that either Ryder and its subsidiaries are all independent entities, or all a single entity. Because piercing the veil

---

[3] For example, ACD issued a statement announcing its appointment of David Whitehead as Delavan's vice-president and controller.

is such a fact-specific inquiry, however, we cannot say that these two findings are mutually exclusive as a matter of law.

## CONCLUSION

For the forgoing reasons defendants' motions for summary judgment are all granted with respect to count I, strict liability, but denied with respect to count II, negligence.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 12, 2002.